UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DENNIS BLANCHARD ET AL.                                  CIVIL ACTION

VERSUS                                                   No. 13-220

SALVADOR LEE ET AL.                                      SECTION "I"

ORDER AND REASONS

Before the Court are motions[1] filed by defendants Bank of America, N.A. and Wells

Fargo Bank, N.A. (collectively, "defendant banks") to dismiss the first amended complaint

("complaint") filed by plaintiffs, Dennis Blanchard et al.[2] Plaintiffs oppose the motions.[3] For the

following reasons, the motions to dismiss are **GRANTED**.

Background

The allegations in the complaint are as follows. Plaintiffs are twelve Louisiana residents

who invested their savings with various brokers, who are also defendants in this matter.[4] These

brokers gave plaintiffs financial advice and managed their savings.[5] The brokers led plaintiffs to

invest in certain investment funds by falsely representing that these funds were partnered with a

---

[1] R. Doc. No. 87; R. Doc. No. 91.
[2] R. Doc. No. 83, at 1.
[3] R. Doc. No. 99; R. Doc. No. 100.
[4] R. Doc. No. 83, at 2-3, 5-6. The Court notes that the vagueness of plaintiffs' complaint makes
the relationships among the defendants and the underlying financial transactions somewhat
unascertainable. *See* R. Doc. No. 83, at 13 ("Defendants E*Trade, Bank of America, and Wells
Fargo acted as a type of back office and clearing brokerage servicer for Defendants Rick
Reynolds and Lori Reynolds by maintaining books and records, issuing account statements and
confirmations, executed transactions, deposited and disbursed wrongfully received investor
money that had been solicited from investments made to the Ponzi scheme when it knew or
should have known that these transactions were suspicious and reportable.").
[5] R. Doc. No. 83, at 6.

legitimate gold mining project.[6] The brokers also caused plaintiffs to make certain other investments "that were not appropriate" for plaintiffs.[7] The brokers received undisclosed commissions for these investments.[8]

Richard Reynolds and Lori Reynolds, who are co-defendants in this matter, wired $725,500 of the investors' funds into a brokerage account with defendant E*Trade Securities, LLC ("E*Trade").[9] After the Reynolds lost $314,015 in "speculative penny stock trading, they transferred $230,750 from the E*Trade account to a Bank of America joint checking account."[10] They used this money for "a variety of personal purposes," including purchasing a home.[11] The Reynolds also wrote checks from the E*Trade account to purchase personal vehicles.[12]

Plaintiffs' allegations as to defendant banks are murky, at best. Plaintiffs broadly assert that defendant banks "received millions of dollars from hundreds of investors 'purchasing' non-existent investments" by "intercept[ing]" the investment funds.[13] The banks "knowingly and improperly" cashed checks and accepted wire transfers that were written for specific investments into the Reynolds' personal and corporate accounts, none of which was actually a legitimate investment account.[14] Defendant banks knew that Richard Reynolds was a fiduciary to the

---

[6] *Id.* at 6-7, 11.
[7] *Id.* at at 6.
[8] *Id.* at 9. The facts as to the brokers are simplified for purposes of the pending motions.
[9] *Id.* at 13. Not all of the investors are parties to the current lawsuit. Consequently, this figure may reflect funds that did not belong to the plaintiffs.
[10] *Id.*
[11] *Id.*
[12] Richard Reynolds' actions apparently gave rise to numerous felony charges in Montana. *Id.* at 1, 6.
[13] *Id.* at 15.
[14] *Id* .at 17-18.

plaintiffs, and defendant banks deposited money into his personal accounts knowing that the funds were not intended for his personal expenses.[15]

On February 4, 2013, plaintiffs filed a lawsuit in the 22nd Judicial District of St. Tammany Parish.[16] The case was removed on February 6, 2013.[17] Several defendants filed motions to dismiss and motions for a more definite statement,[18] which presented arguments overlapping those currently before the Court. In response, after obtaining leave of Court, plaintiffs filed an amended complaint. With respect to defendant banks, plaintiffs allege breach of contract, negligence, violations of the Louisiana Uniform Fiduciaries Law, aiding and abetting breach of fiduciary duty, violations of the Louisiana Racketeering Act, conspiracy, negligent misrepresentations, and detrimental reliance claims.[19] Defendant banks filed separate motions to dismiss that will be addressed here jointly.[20] Plaintiffs oppose these motions.[21]

### Law and Analysis

**I. Federal Rule of Civil Procedure 12(b)(6)**

A district court may dismiss a complaint, or any part of it, for failure to state a claim upon which relief can be granted if the plaintiff has not set forth a factual allegation in support of his claim that would entitle him to relief. Fed. R. Civ. Proc. 12(b)(6); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007); *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir. 2007). As the U.S. Court of Appeals for the Fifth Circuit explained in *Gonzalez v. Kay*:

> "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544,

---

[15] *Id.* at 20, 25.
[16] R. Doc. No. 1
[17] *Id.*
[18] *E.g.*, R. Doc. No. 25.
[19] R. Doc. No. 83, at 16-18, 20-25.
[20] R. Doc. No. 87-1; R. Doc. No. 91-1.
[21] R. Doc. No. 99; R. Doc. No. 100.

> 555, 127 S.Ct. 1955, 167 L. Ed.2d 929 (2007). The Supreme Court recently expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955, 167 L.Ed.2d 929). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

577 F.3d 600, 603 (5th Cir. 2009).

This Court will not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey,* 197 F.3d at 774; *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). Further, in *Iqbal*, the Supreme Court stated that, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 555 (2007)).

Defendant banks correctly assert in their reply briefs that plaintiffs predicate their argument on the incorrect legal standard.[22] *Twombly* makes it clear that the "no set of facts" standard has "earned its retirement" and is "best forgotten," 550 U.S. at 563, while the facially plausible standard has prevailed. *Id.* at 569.

---

[22] R. Doc. No. 102, at 2; R. Doc. No. 103, at 1-3.

**II. Existence of a Fiduciary Duty**

Although plaintiffs do not allege breach of fiduciary duty as a cause of action against defendant banks,[23] much of the analysis of their other causes of actions as to the banks relies on the existence of such a duty.

Defendant banks argue that Louisiana law makes it clear that "banks ordinarily owe no duty, fiduciary or otherwise," to third parties.[24] *Eubanks v. FDIC*, 977 F.2d 166, 170 n.3 (5th Cir. 1992); *see also Guidry v. Bank of LaPlace*, 740 F. Supp. 1208, 1219 (5th Cir. 1990); *Autin v. Martin*, 576 So.2d 72, 75 (La. Ct. App. 5th 1991). They specifically cite Louisiana's "No implied fiduciary obligations statute," which generally states that no financial institution will have a fiduciary duty to a third party unless there is a written agency or trust agreement stating that the financial institution agrees to take on such a duty.[25] La. Rev. Stat. 6:1124.

As discussed below, plaintiffs do not plausibly allege that any contract creates a fiduciary duty to them. Nonetheless, plaintiffs identify two cases that, they contend, protect them from the no fiduciary obligations statute.

Plaintiffs identify *In re Succession of McKnight*, 768 So. 2d 794, 798 (La. App. 2d Cir. 2000), as a case supporting the presence of a duty in the absence of a contract with a bank.[26] In *McKnight*, the Louisiana Court of Appeals held: "Generally, a bank is not deemed to act as a fiduciary to its customers or third parties. However, in some instances a party's assumption of a contractual duty may create a corollary tort duty in favor of a third person." Here, however, plaintiffs have not alleged facts suggesting that they were customers of defendant banks, that

---

[23] *See* R. Doc. No. 83, at 18-19 (alleging breach of fiduciary duty as to "Defendant Brokers and Corporations").

[24] *E.g.*, Rec. Doc. 101-2, at 3.

[25] R. Doc. No. 101-2, at 4.

[26] *E.g.*, R. Doc. No. 100, at 4.

plaintiffs were the third-party beneficiaries of a contract to which defendant banks were parties, that any other contractual duties were assumed by defendant banks, or that this case is otherwise factually analogous to *McKnight*. *See also D & J Tire, Inc. v. Bank One, La. Nat'l Ass'n*, No. 02-0935, 838 So. 2d 112, 114-15 (La. App. 3d Cir. 2003). The other case cited by plaintiffs, *Oakes v. Countrywide Home Loans, Inc.*, is similarly distinguishable. No. 07-9743, 2012 WL 2327920 (E.D. La. June 1, 2012). Unlike in the present case, the bank in *Oakes* was a loan servicer for the plaintiff. *Id.* at *6. This distinction is critical because the *Oakes* court identified the loan-servicing relationship as the source of the duty between the parties. *Id.*

Plaintiffs further argue that defendant banks have a duty to plaintiffs through the Bank Secrecy Act,[27] but the Bank Secrecy Act does not create a private right of action or give rise to a duty.[28]

For these reasons, plaintiffs have not alleged a fiduciary duty that is plausible on its face.

## II. Causes of Action

### A. Breach of Contract

Plaintiffs contend that they have "amended their complaint to plead the contract" with defendant banks,[29] presumably in response to the defendant banks' previous arguments that the breach of contract claim was "rife with shortcomings," including conclusory allegations relative to the existence of any contract.[30] But the conclusory language in the complaint remains essentially unchanged. Plaintiffs allege:

> A written or oral agreement existed between Plaintiffs and Defendant Banks.
> Defendant Banks were obligated to process the funds into the Tenas Lake

---

[27] R. Doc. No. 99, at 5-6; R. Doc. No. 100, at 5-6.
[28] *E.g.*, *Marlin v. Moody Nat'l Bank*, *N.A.*, No. 04-4443, 2006 WL 2382325, at *7 (S.D. Tex. Aug. 16, 2006), aff'd 248 F. App'x 534 (5th Cir. 2007).
[29] *E.g.*, R. Doc. No. 100, at 8.
[30] *E.g.*, R. Doc. No. 35-1, at 5.

> Mining Project. . . . Defendant Banks breached those duties by failing to cash the check as directed by the instrument and instead allowing the check to be deposited into personal accounts of Defendant Richard and Lori Reynolds.[31]

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."[32] *Iqbal*, 556 U.S. at 678. The mere allegation that there might be a "written or oral agreement" between the parties without at least some factual allegations supporting its existence is farfetched speculation at best. In *Twombly*, the U.S. Supreme Court quoted the U.S. Court of Appeals for the Seventh Circuit: "terms like 'conspiracy' or even 'agreement'" may be sufficient to state a claim with other "more specific allegations" such as presenting evidence of a written agreement or facts that would point to an oral agreement. 550 U.S. at 557 (quoting *DM Research, Inc. v. College of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)). Where, as here, such specific allegations are lacking, "a court is not required to accept such terms as a sufficient basis for a complaint." *Id.* (quoting *DM Research, Inc.*, 170 F.3d at 56).

As to the statement in which plaintiffs refer to defendant banks cashing a check, no one contends that defendant banks entered into a contract with plaintiffs by cashing or depositing a check made out to a customer of defendant banks. *Compare Pierre v. Bank*, 801 So. 2d 1213, 1216 (La. App. 4th Cir. 2001); *Slaughter v. Arco Chem. Co.*, 931 So. 2d 387, 394 (La. App. 4th Cir. 2006).

---

[31] R. Doc. No. 83, at 18; R. Doc. No. 1-3, at 13-14.
[32] R. Doc. No. 101-2, at 12.

Without further factual allegations, it is not facially plausible that there is a contract between plaintiffs and defendant banks. Accordingly, the motions to dismiss are **GRANTED** with respect to the breach of contract claims.

### B. Negligence

In a Louisiana negligence action under article 2315, plaintiffs bear the burden of proving duty, breach, causation, and damages. *Wainwright v. Fontenot,* 774 So. 2d 70, 74 (La. 2000) (citing *Buckley v. Exxon Corp.,* 390 So. 2d 512, 514 (La. 1980)). Plaintiffs contend that defendant banks have a duty of care to the plaintiffs with respect to the receipt of wired funds.[33] They further allege that they breached this duty by "knowingly and improperly cashing checks and accepting wires written for specific investments."[34]

In *Priola Construction Corp.*, the Louisiana Court of Appeals for the Third Circuit observed: "[B]efore a bank can be found liable utilizing the duty-risk analysis under La. Civ. Code art. 2315, 'it must first be determined that the bank owed a fiduciary duty to the plaintiff.'" *Priola Const. Corp. v. Profast Dev. Group, Inc.*, 21 So. 3d 456, 461 (La. Ct. App. 3rd. 2009) (quotation omitted).[35] Plaintiffs have failed to identify any plausible fiduciary duty, and therefore their negligence claim fails on its face. The motions to dismiss are **GRANTED** with respect to the negligence claims.

### C. Negligent Misrepresentation

Under Louisiana law, in order to prevail on a claim for negligent misrepresentation, a plaintiff must establish the following elements: (1) the defendant, in the course of its business or

---

[33] R. Doc. No. 83, at 17.

[34] *Id.*

[35] The Louisiana Supreme Court denied a writ in *Priola*, 21 So. 3d 456, and plaintiffs have not identified any authority suggesting that the Louisiana Supreme Court would disagree with *Priola*.

other matters in which it had a pecuniary interest, supplied false information; (2) the defendant

had a legal duty to supply correct information to the plaintiff; (3) the defendant breached its duty,

which can be breached by omission as well as by affirmative misrepresentation; and (4) the

plaintiff suffered damages or pecuniary loss as a result of its justifiable reliance upon the

omission or affirmative misrepresentation. *See Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 292

(5th Cir. 2001).

In *Priola*, the Louisiana Court of Appeals held: "La.R.S. 6:1124 [forecloses] the

possibility of a lawsuit against a bank for negligent misrepresentation unless there was a contract

or a written agreement that the financial institution had a fiduciary obligation to the person

claiming negligent misrepresentation." 21 So. 3d at 462; *see also Mose v. Keybank Nat'l Ass'n*,

464 F. App'x 260, 262-63 (5th Cir. 2012). Plaintiffs have not alleged that a facially plausible

contract or written agreement with defendant banks created a fiduciary duty.

Accordingly, the motions to dismiss are **GRANTED** with respect to the negligent

misrepresentation claims.

### D. Uniform Fiduciaries Law

The Uniform Fiduciaries law addresses the obligations of a bank with respect to a

fiduciary who is breaching his duties. Plaintiffs expressly rely on La. Rev. Stat. Section 3806,

"Check upon Principal's Account; Liability of Bank Paying, which provides:

> If a check or other bill of exchange is drawn by a fiduciary as such,
> or in the name of his principal by a fiduciary empowered to draw
> such instrument in the name of his principal, payable to the
> fiduciary personally, or payable to a third person and by him
> transferred to the fiduciary, and is thereafter transferred by the
> fiduciary, whether in payment of a personal debt of the fiduciary or
> otherwise, the transferee is not bound to inquire whether the
> fiduciary is committing a breach of his obligation as fiduciary in
> transferring the instrument and is not chargeable with notice that

> the fiduciary is committing a breach of his obligation as fiduciary, *unless he takes the instrument with actual knowledge of such breach, or with the knowledge of such facts that his action in taking the instrument amounts to bad faith.*

(emphasis added). The Court notes, however, that plaintiffs' allegations as to defendant banks also overlap with La. Rev. Stat. Section 3809, "Deposit by Fiduciary to his Personal Credit; Duties and Liabilities of Bank," which similarly provides:

> If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and endorsed by him, if he is empowered to endorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, *unless, the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the checks amounts to bad faith.*

(emphasis added).

Plaintiffs allege that defendant banks "knowingly allowed checks and/or wire transfers to be wrongfully deposited for the personal benefit of Rick Reynolds who was a fiduciary to the Plaintiffs as he was acting as their broker in order to receive the deposits and transfers for specific investments."[36] But, pursuant to the Uniform Fiduciaries Law, it is not enough to allege that the fiduciary drew a check in his capacity as a fiduciary and deposited it into a personal account. "Louisiana law specifically provides that even when a bank has actual knowledge that a

---

[36] R. Doc. No. 83, at 20.

person is withdrawing money from a fiduciary account and depositing it into his own personal account, it has no duty to inquire whether the fiduciary is thereby committing a breach of his obligation as fiduciary." *In re Succession of Wardlaw*, No. 94-2026, 1994 WL 577442, at \*7 (E. D. La. Oct. 17, 1994) (Clement, J.). Plaintiffs have not alleged specific facts plausibly suggesting that defendant banks had knowledge of the breach of a fiduciary duty.

For these reasons, defendant banks' motions to dismiss are **GRANTED** with respect to plaintiffs' Uniform Fiduciary Act claims.

### E. Aiding and Abetting Breach of Fiduciary Duty

Defendant banks argue that there is no separate cause of action under Louisiana law for aiding and abetting the breach of fiduciary duty.[37] Plaintiffs copy,[38] without citation, language from a journal article[39] discussing the eighteen states that have recognized this cause of action, but these states do not include Louisiana. Moreover, plaintiffs do not identify any authority supporting the existence of such a cause of action in Louisiana.

In any case, as described above, defendant banks did not have a duty to inquire into the transactions at issue. "It can hardly be argued that [defendant banks were] manifesting" the "shared criminal intent" required for aiding and abetting liability "by not investigating something that [they are] explicitly not required to investigate." *Wardlaw*, 1994 WL 577442, at \*7.

Plaintiffs argue that defendant banks used atypical banking procedures that give rise to an inference of knowledge of misconduct, and plaintiffs cite as supporting authority *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1120 (C.D. Cal. 2003). In that case, however, plaintiffs alleged that defendants "alter[ed] their normal ways of doing business" to

---

[37] R. Doc. No. 101-2, at 11.
[38] *See* R. Doc. No 100, at 11 & n. 1.
[39] *See* Richard Mason, *Civil Liability for Aiding and Abetting*, 61 Bus. Law. 1135, 1149, 1159 & n. 161 (2006).

"accommodate" a Ponzi scheme. *Id.* Here, plaintiffs make no such allegation. Instead they contend that defendant banks generally used "lax money-laundering programs."[40] Plaintiffs have not, however, identified authority supporting the assertion that the uniform laxity of such programs supports aiding and abetting liability. *See also Wiand v. Wells Fargo Bank*, *N.A.*, No. 12-557, 2013 WL 1401414, at *5 (M.D. Fla. Apr. 5, 2013) ("Cases addressing the liability of banks for Ponzi schemes consistently hold that 'red flags' arising from suspicious activity giving rise to the presumption that the bank should have known about the Ponzi scheme are insufficient to allege aiding-and-abetting liability.").

The motions to dismiss are **GRANTED** with respect to the aiding and abetting a breach of fiduciary duty claims.

### F. Louisiana Racketeering Act

Plaintiffs allege that defendant banks violated the Louisiana Racketeering Act, La. R.S. 15:1351, *et seq*. "Although these statutes are part of the Code of Criminal Procedure, they provide for a civil cause of action similar to the federal RICO statute." *Thomas v. N. 40 Land Dev., Inc.*, 894 So. 2d 1160, 1175 (La. Ct. App. 4th 2005).

The Louisiana Racketeering Act states:

> (a) It shall be unlawful for any person who has knowingly received any income derived, directly or indirectly, from a pattern to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in acquisition of any title to, or any right, interest, or equity in immovable property or in the establishment or operation of any enterprise.
>
> (b) It is unlawful for any person, through a pattern of racketeering activity, knowingly to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or immovable property.

---

[40] R. Doc. No. 83, at 14.

> (c) It is unlawful for any person employed by, or associated with, any enterprise knowingly to conduct or participate, in directly or indirectly, such enterprise through a pattern of racketeering activity.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Plaintiffs assert in the complaint that defendant banks knowingly violated Louisiana Racketeering laws by participating in the predicate acts of violating the Louisiana Securities Law and committing theft.[41] Defendant banks argue that plaintiffs' assertions are vague and, much like their claims for negligent misrepresentation and detrimental reliance, are recitations of the elements without facially plausible facts. Defendant banks further argue that theft cannot serve as racketeering predicate offense.[42]

Plaintiffs' complaint does not contain facially plausible allegations that the banks knew of the alleged criminal nature of the Ponzi scheme activities.[43] *See Reyes v. Zion First Nat'l Bank*, No. 10-345, 2012 WL 947139, at *10 (D. Penn. Mar. 21, 2012). Nor does it contain facially plausible facts connecting the defendant banks with the alleged RICO activity, beyond the provision of "ordinary banking services." *Id.* Read in full, the complaint suggests that defendant banks were accepting funds from Richard and Lisa Reynolds (not from the plaintiffs) in the ordinary manner in which they normally provide services to customers and not operating an enterprise in violation of the statute.

---

[41] R. Doc. No. 83, at 22.

[42] *E.g.*, R. Doc. No. 102-2, at 15; The Fifth Circuit has recognized that it is "far from certain that [theft] can serve as RICO predicate acts since [it] is not one of the enumerated state law offenses that constitute racketeering activity" in 18 U.S. C. 1961(1)(A). *Dennis v. Gen. Imaging, Inc.*, 918 F.2d 496, 512 (5th Cir.). The Louisiana Racketeering Act similarly does not enumerate theft as a predicate offense.

[43] R. Doc. No. 83, at 15.

For these reasons, the motions to dismiss are **GRANTED** with respect to violations of the Louisiana Racketeering Act.

### G. Conspiracy

Louisiana Civil Code art. 2324 provides, in pertinent part: "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." La. Civ. Code art. 2324 (2006). Louisiana does not recognize an independent tort of civil conspiracy. *Rhyce v. Martin*, 173 F. Supp. 2d 521, 535 (E.D. La. 2001). "The actionable element under article 2324 is the intentional tort the conspirators agreed to commit and committed in whole or in part causing plaintiff's injury." *Rhyce*, 173 F. Supp. 2d at 535.

"To recover under a civil conspiracy theory of liability, the plaintiff must prove that an agreement existed to commit an illegal or tortious act which resulted in plaintiff's injury." *Sullivan v. Wallace,* 859 So. 2d 245, 248 (La. Ct. App. 2d 2003). Ultimately, "[t]he plaintiff must . . . prove an unlawful act and assistance or encouragement that amounts to a conspiracy. This assistance or encouragement must be of such quality and character that a jury would be permitted to infer from it an underlying agreement and act that is the essence of the conspiracy." *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 51 F.3d 553, 557 (5th Cir. 1995).

With respect to defendant banks, plaintiffs allege: "Defendant Banks also conspired to launder money into personal accounts when it knew that the funds were not intended for personal expenses of Defendant Reynolds. Defendant Banks failed to file suspicious activity reports even after being confronted with suspicious transactions and knowingly failed to act upon them."[44]

---

[44] *Id.* at 25.

Plaintiffs fail to state facts that would lead the Court to find a facially plausible agreement between the defendant banks or between the defendant banks and other members of the alleged conspiracy, a tortious act, or a manner in which the defendant banks provided assistance or encouragement to the other alleged conspirators. Plaintiffs restate in their opposition the conclusory facts that they allege in their complaint, but these facts do not reach the requisite level of facial plausibility. As stated above, *Twombly* confirms that "terms like 'conspiracy' or even 'agreement'" may be sufficient to state a claim with other "more specific allegations," but such terms generally are too conclusory on their own. 550 U.S. at 557 (quoting *DM Research, Inc.*, 170 F.3d at 56).

The motions to dismiss are **GRANTED** with respect to the conspiracy claim.

### H. Detrimental Reliance

In order to establish detrimental reliance under Louisiana law, a party must prove:

> (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. *Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc.*, 871 So. 2d 380, 393 (La. Ct. App. 4th 2004),  writ denied, 876 So. 2d 834 (La. June 25, 2004); *Babkow v. Morris Bart, P.L.C.*, 726 So. 2d 423, 427 (1998). Significantly, to prevail on a detrimental reliance claim, Louisiana law does not require proof of a formal, valid, and enforceable contract. *Babkow*, 726 So. 2d at 429 (citing *Morris v. People's Bank & Trust Co.,* 580 So. 2d 1029 (La. Ct. App. 3rd 1991), *writ denied*, 588 So. 2d 102 (La. 1991)).

*Priola Constr. Corp.*, 21 So. 3d at 462.

With respect to the first element, plaintiffs allege that defendant banks "converted investor funds into the [P]onzi scheme through the use of its banking operations when they knew the transactions were suspicious without informing plaintiffs."[45] With respect to the second and third elements, plaintiffs allege "Plaintiffs justifiably relied on these representations and/or

---

[45] *Id.* at 21.

conduct and changed their position to their detriment. Defendants' actions have caused damages to the Plaintiffs in the amount to be shown at the trial of this matter."[46]

Plaintiffs' detrimental reliance allegations fail to meet the threshold of plausibility. The claim includes a "formulaic recitation of the elements of the cause of action" that is plainly insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). It is for these reasons that the motions to dismiss are **GRANTED** with respect to the detrimental reliance claim.

### Conclusion

Plaintiffs' claims against defendant banks are facially implausible and lack sufficient specificity even under the most generous reading of the complaint.

**IT IS ORDERED** that the motions to dismiss the plaintiffs' claims against defendant banks in the above-caption matter are **GRANTED** and that plaintiffs' claims against defendant banks are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, August 8, 2013.

             **LANCE M. AFRICK**
             **UNITED STATES DISTRICT JUDGE**

---

[46] *Id.*